FILED
97 JUN 16 PM 1:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JESTINE ANSLEY SANFORD, | ] |
| | ] |
| Plaintiff(s), | ] |
| | ] |
| vs. | ] CV-96-N-1290-S |
| | ] |
| BELLSOUTH | ] |
| TELECOMMUNICATIONS, INC., | ] |
| | ] |
| Defendant(s). | ] |

**ENTERED**
JUN 16 1997

**Memorandum of Opinion**

## I.   Introduction.

In this employment discrimination action, the plaintiff, Jestine Ansley Sanford ("Sanford"), brings a claim against the defendant, BellSouth Telecommunications, Inc. ("BellSouth"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, the plaintiff contends that the defendant discriminated against her on the basis of race when it suspended her on September 12, 1995, for using profanity in the workplace directed at a coworker in a threatening manner. *See Complaint* at 4 (unnumbered pages).

Sanford originally brought claims pursuant to Title VII regarding other disciplinary measures BellSouth took against her prior to 1995. *See id.* at 2-3. In the court's May 6, 1997, pretrial order, however, the only claim the plaintiff asserts is that involving the September 12, 1995, suspension. *Pretrial Order* at 5-8.

The matter is presently before the court on the defendant's motion for summary judgment, filed on April 15, 1997. The motion has been fully briefed and, upon due consideration, will be granted and the plaintiff's claim dismissed.

## II.     **Statement of Facts.**[1]

The plaintiff is a black female who was hired by BellSouth in 1970 as an operator in Birmingham, Alabama, and has held various nonmanagement positions throughout her tenure an a BellSouth employee. She currently works as a maintenance administrator in the defendant's Business Repair Center in Birmingham and is responsible for handling repair requests from BellSouth's business customers. Throughout Sanford's employment, she has been a member of a collective bargaining unit represented by the Communications Workers of America (the "Union"). Since the late 1980s, she has been a Union steward responsible for presenting grievances under the collective bargaining agreement on behalf of other employees. Sanford herself has had numerous grievances filed on her behalf regarding a variety of issues, including job assignments and disciplinary entries.

The plaintiff has been disciplined on several occasions throughout her employment, particularly with respect to her attendance.[2] On September 7, 1995, Sanford was involved

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] The plaintiff was counseled for unsatisfactory attendance and punctuality on October 30, 1985, on July 30, 1986, and on January 12, 1990. She was counseled for unsatisfactory work performance on January 13, 1992. She was warned for unsatisfactory attendance and punctuality on November 10, 1986, and on July 12, 1990. She was placed on suspension for unsatisfactory attendance on June 10, 1988 (three days), and on August 9, 1993 (ten days). She was placed on suspension for unsatisfactory attendance and punctuality on October 23, 1990 (two days), and on September 9, 1991 (five days).

in an altercation with one of her white coworkers, Rebecca Pomeroy ("Pomeroy"). The plaintiff asked Pomeroy several times to leave the area of the plaintiff's desk. When Pomeroy refused, Sanford allegedly shouted, "Get your motherf___ing ass away from my desk," or words to that effect. *Wright Affidavit* at ¶¶ 3-5. The plaintiff contends that she told Pomeroy to "get her big fat waddly ass" away from her desk. *Plaintiff's Deposition* at 70. Sanford's supervisor, Wanda Wright "(Wright"), interviewed the employees in the vicinity of the incident and concluded that Sanford's actions towards Pomeroy were threatening and disruptive. Wright met with the plaintiff and a Union representative on September 12, 1995, and questioned the plaintiff about the incident. Sanford relayed a version of the altercation that was "somewhat different" than that of the other employees Wright interviewed. *Wright Affidavit* at ¶ 6. Wright then concluded based upon the responses of employees not involved in the incident that the plaintiff's actions were in fact threatening and disruptive. She therefore suspended the plaintiff on September 12, 1995, for approximately three days for using profanity in the workplace directed at a coworker in a threatening manner. Wright is not aware of any other situation in which an employee in the Business Repair Center acted similarly to the plaintiff in this instance.

  The Union subsequently filed a grievance regarding the plaintiff's suspension pursuant to the grievance and arbitration procedures of the collective bargaining agreement. The grievance was settled at the second level of the grievance process, and the defendant agreed to remove the disciplinary entry and pay Sanford for the three days during which she was suspended.

3

Sometime in late 1996, Melvin Burroughs ("Burroughs"), a white maintenance administrator in the Small Business Repair Center, and two coworkers, Pomeroy and Carolyn Zehler ("Zehler"), were involved in a "misunderstanding." *Burroughs Affidavit* at ¶ 4. The three employees were working late without supervision when Pomeroy told Burroughs and Zehler they were performing work they were not supposed to be doing. Burroughs became upset at Pomeroy and told her to "carry her fat ass back to her own desk and mind her own business" because Pomeroy did not act as supervisor to him or Zehler. *Id.* The incident was later brought to the supervisor's attention but the defendant took no disciplinary action.

On the same day the plaintiff was suspended, she filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she had been suspended because of her race. On January 19, 1996, the EEOC notified Sanford that it was dismissing the charge because it concluded that further investigation would not likely result in a finding of a Title VII violation and issued the plaintiff a Notice of Right to Sue. The plaintiff filed this action on May 15, 1996.

### III. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law

will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference

but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### IV. Discussion.

The plaintiff contends that BellSouth discriminated against her on the basis of race when it suspended her on September 12, 1995. A plaintiff who alleges disparate treatment based upon race under Title VII must prove that the defendant acted with discriminatory purpose. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). The plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case. *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). This may be done in three ways: (1) "by presenting direct evidence of discriminatory intent; [(2)] by meeting the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

#### A. Direct Evidence and Statistical Evidence.

"Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989) (citations omitted). "[O]nly the most blatant remarks, whose intent could be nothing more than to discriminate . . . constitute direct evidence of discrimination." *Id.* at 582 (footnote omitted). A second means by which Sanford may establish a prima facie case is by presenting statistical evidence that demonstrates a pattern and practice of race discrimination on the part of BellSouth. *See Early v. Champion*

*Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (age discrimination case). The plaintiff has presented no direct evidence or statistical data; therefore, she must attempt to establish a prima facie case of discrimination through circumstantial evidence.

### B.     *McDonnell Douglas* Test.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[3] "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring an articulation of some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. *Id.* "'[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.'" *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then demonstrate by a preponderance of the evidence that the reason

---

[3] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

8

offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "'[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment.'" *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original). The plaintiff may establish that the defendant intentionally discriminated against him "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). "'Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.'" *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir.).

In order to establish a prima facie case of discrimination under the instant circumstances, Sanford must demonstrate that (1) she is a member of a protected class; and either (2) she did not violate a work rule; or (2) she engaged in misconduct similar to

that of a person outside the protected class and (3) the disciplinary measures enforced against her were more severe than those enforced against the other persons engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

First, Sanford disputes that she used profanity in a threatening manner during the altercation with Rebecca Pomeroy, *Plaintiff's Submission* at 2 (unnumbered pages), and thus did not violate a work rule. She therefore has established a prima facie case of disparate treatment. The burden thus shifts to the defendant to demonstrate it had a legitimate, nondiscriminatory reason for suspending Sanford. This BellSouth has done, for the undisputed facts establish that Wanda Wright believed her investigation into the incident conclusively revealed that the plaintiff had used profanity in the workplace directed at a coworker in a threatening manner. "The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation." *Id.* Consequently, the burden returns to Sanford to demonstrate by a preponderance of the evidence that the defendant's proffered reason for suspending her is merely a pretext for discriminatory motive. She fails to meet her burden, however, for she has offered no evidence other than her own conclusory allegations to refute BellSouth's stated belief that the plaintiff directed profanity at a coworker in a threatening manner. She admits that Wright told her that Pomeroy perceived that she had been threatened and that this is why she was suspended. *Sanford Deposition* at 176. Therefore, she has failed to demonstrate that BellSouth's proffered reason for suspending her was merely pretextual.

Alternatively, the plaintiff attempts to make out a prima facie case of disparate treatment by comparing the disciplinary measures BellSouth took against her with the disciplinary measures the company took against other employees for acting similarly. *See Jones*, 874 F.2d at 1540. To establish the requisite degree of similarity between herself and her comparator, Sanford must show that the white employee engaged in "'nearly identical' conduct" but was not suspended for such conduct. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). She has presented evidence demonstrating that a white coworker, Melvin Burroughs, used profanity directed at Pomeroy as well, that a supervisor was informed of the incident, and that BellSouth took no disciplinary action in that instance. The plaintiff has failed to establish, however, that the supervisor informed of the incident was Wanda Wright. "[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones*, 874 F.2d at 1541. Moreover, she has not demonstrated that BellSouth or any of its supervisory personnel considered Burroughs' actions to be threatening toward Pomeroy in any manner. Consequently, Burroughs' conduct cannot be considered "nearly identical" to that of the plaintiff. Accordingly, the plaintiff's disparate treatment claim will be dismissed.[4]

---

[4] Moreover, though the plaintiff has offered a number of unauthenticated documents purportedly showing that workers in her area used profanity, none demonstrates the sort of confrontational and threatening situation that was believed to have been present at the September 1995 incident with Ms. Pemeroy.

### V.  Conclusion.

The defendant's motion for summary judgment will be granted and the plaintiff's claim dismissed. Costs will be taxed in favor of the defendant and against the plaintiff. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this ___16th___ of June, 1997.

*[signature]*
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE